UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICE MARIE RODRIGUEZ,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>Defendant. | Case No. 1:21-cv-00463-ADA-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT**<br><br>(Docs. 22, 24)<br><br>FOURTEEN-DAY DEADLINE |

**Findings and Recommendations**

**INTRODUCTION**

Plaintiff Alice Marie Rodriguez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits under Title II of the Social Security Act and for supplemental security income under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe for issuance of findings and recommendations.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

1

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court will recommend denying Plaintiff's appeal and affirming the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff protectively filed applications for disability insurance benefits and supplemental security income on December 21, 2017. AR 20, 240-42, 245-46, 247-54.[2] Plaintiff alleged that she became disabled on April 13, 2014, due to major depressive disorder, borderline personality disorder, dissociative disorder, chronic back pain, hyperlipidemia, headaches, left leg limp with pain, low back pain and high hemoglobin A1C level. AR 240, 247, 281. Plaintiff's applications were denied initially and on reconsideration. AR 155-59, 160-64, 173-77. Subsequently, Plaintiff requested a hearing before an ALJ. Following a hearing, ALJ Lynn Ginsberg issued an order denying benefits on March 3, 2020. AR 16-36, 44-74. Thereafter, Plaintiff sought review of the decision, which the Appeals Counsel denied, making the ALJ's decision the Commissioner's final decision. AR 5-9. This appeal followed.

### Hearing Testimony

ALJ Ginsberg held a video hearing on February 3, 2020. Plaintiff appeared with her non-attorney representative, Malinda Davies. Pat Pauline, an impartial vocational expert, also appeared and testified. AR 20, 46-47.

In response to questions from the ALJ, Plaintiff testified that she was not seeing anyone in connection with her mental health issues. She last saw someone in December 2018. Her primary care physician prescribed her medication, which is somewhat helpful. AR 48-49.

When discussing Plaintiff's use of a cane, the ALJ noted Plaintiff did not have a cane at the hearing. Plaintiff testified that her condition had gotten better in terms of needing a cane. She uses

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

her cane, but she can drive short distances and walk short distances of about 15 or 20 feet. For anything above that, she would want her cane. AR 49-50.

Plaintiff reported that she currently lives by herself because her mom fell and is in a nursing home for rehab. There is no one to help her take care of the home. She does her own sheets, cleans, cooks, drives to the bank and grocery store. She probably leaves her house once a week. She does not follow a daily routine and she does not really have any friends or social acquaintances. She sees her mom once every two weeks. AR 50-52.

When asked why she believed there was no work that she could do, Plaintiff testified that she has problems with incontinence and can only sit for a certain amount of time. She would need several breaks. She has had incontinence for several years, worsening in the past three or four months. She also has inflammation in her stomach, gastritis, and dysphasia. AR 52-53.

In response to questions from her non-attorney representative, Plaintiff explained that she is limited in the time she can do tasks around the house. She can only sweep for 10 to 15 minutes before she has to sit down for about 10 minutes. She can stand for 15 minutes before she has to sit down for about 5 minutes. She can walk without a cane about 15 to 20 feet. She can walk with a cane or assistive device for about 30 or 35 minutes. She can sit for about 25 minutes at one time before her legs get numb and she has sharp pain in her lower back. She will lie down about twice during the day for 45 minutes to an hour because she gets tired, fatigued. AR 53-56. She can lift and carry about 10 pounds. AR 58.

When asked about her mental health, Plaintiff testified that her medication does not resolve the problems, but helps to calm her down when she gets bouts of anxiety. It does not help her overall thinking. She gets anxious around people, which would affect her ability to work. If she had a job where she worked alone, her mental health impairments would affect her because she gets in a fog sometimes where she cannot recall things and sometimes has problems communicating. AR 56.

Plaintiff confirmed that she has a tens unit and uses it every night before she goes to bed. It helps with the nerves and muscle spasms. She has had couple of accidents where she fell. She had a fall a few days before the hearing. She was using her cane at the time. She primarily has problems with her lower body, but she sometimes gets pressure around her chest. She is seeing a cardiologist,

who said she has a low heart rate.  She takes nitroglycerin when she gets feelings of pressure or pain.  She also is on some low dose aspirin.  She takes the nitroglycerin about three or four times per month.  She gets headaches and a little dizzy after taking it.  AR 56-58.  The headaches last about ten minutes.  AR 60.

Plaintiff also clarified that when she was working, she had problems with urination and leaking.  She would use the restroom about four to five times in a 10-hour period.  She currently uses the restroom about six or seven times, and it takes her almost ten minutes.  She uses diapers and has been for about two months.  AR 59.

Plaintiff testified that she worked for the County of Tulare as a detention service officer, which required her to sit in a control room, monitor inmates through CCTV, and open doors with switches.  She was seated for eight hours.  She worked a control board, which involving reaching, stretching, answering phones, and recording.  For the County of Fresno, Plaintiff also worked in a control room and walked the floors, doing inmate counts, searching cells, and searching prisoners.  She did not carry a gun in either job.  AR 61-63.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE.  The VE characterized Plaintiff's past work as correction officer (detention service officer).  AR 63-65.  The ALJ also asked the VE hypothetical questions.  For the first hypothetical, the ALJ asked the VE to assume a hypothetical individual that could lift and carry up to 20 pounds occasionally, 10 pounds frequently, could stand and walk for about six hours in eight-hour workday, and sit for about six hours in an eight-hour workday with normal breaks.  This individual could push and pull occasionally with the left upper extremity, could never climb ladders, ropes, or scaffolds, could never crawl, but could occasionally climb ramps and stairs, balance, stoop, kneel, and crouch.  In terms of reaching with the left upper extremity, this individual could reach in all directions frequently, except for overhead reaching, which could be done occasionally.  This individual could have occasional exposure to excessive vibration, occasional exposure to environmental irritants such as fumes, odors, dust, and gases, occasional exposure to poorly ventilated areas, no use of moving hazardous machinery, and no exposure to unprotected heights.  The VE testified that this individual could perform Plaintiff's past work.  AR 65-66.

For the second hypothetical, ALJ added to the first hypothetical that the individual could only understand, remember, and carry out simple instructions; that is, instructions that could be learned with up to and including 30 days of on-the-job training. This individual could only have occasional interaction with the public, could keep sufficient pace to complete and meet quotas typically found in unskilled work, and could adapt to change in the workplace. The VE testified that such an individual would not be able to perform any of Plaintiff's past work, but there were other jobs in the national economy that such an individual could perform, such as marker, router, and office helper. AR 66-67.

For the third hypothetical, the ALJ asked the VE to consider the first hypothetical, but the individual could only lift up to ten pounds occasionally and less than ten pounds frequently, could stand and walk for about four hours in an eight-hour workday, and could sit for up to six hours in an eight-hour workday with normal breaks. This individual also would need to use a handheld assistive device in the form of cane for walking greater than 20 feet. The VE testified that such an individual would not be able to perform Plaintiff's past work, but could perform other jobs in the national economy, such as small products assembler, surveillance system monitor, and document preparer. AR 67-68.

For the fourth hypothetical, the ALJ asked the VE to add that the individual was able to understand, remember, and carry out simple instructions that could be learned with up to and including 30 days on-the-job training, could keep pace sufficient to complete tasks and meet quotas typically found in unskilled work, could only have occasional interaction with the public, and could adapt to changes in the workplace. AR 68-69. The VE testified that the identified jobs would remain with no erosion. AR 69.

For the fifth hypothetical, the ALJ asked the VE to assume that the individual would be off task 20 percent or greater as a result of pain and other symptoms. The VE testified that such an individual would not be able to perform any of Plaintiff's past work or any jobs in the national economy. AR 69.

For the sixth hypothetical, Plaintiff's representative asked the VE to consider an individual who would require a sit/stand option at the workstation and would need the use of a cane when standing or walking at least two days per week. The individual could sit for 25 minutes and could

5

stand for 15 minutes. The VE testified that such an individual would not be competitively employable. AR 70-72. If an individual would require three breaks of 20 minutes each in addition to normal breaks, then it would not be tolerated. AR 73.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. AR 22. Since the alleged onset date of April 13, 2014, Plaintiff had the following severe impairments: obesity, degenerative disc disease of the lumbar spine, chondromalacia of the right knee, degenerative joint disease of the left shoulder, depressive disorder, borderline personality disorder, and dissociative/conversion disorder. AR 22-25. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 25-27.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work. She could lift and/or carry up to twenty pounds occasionally and ten pounds frequently, stand and/or walk about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday with normal breaks. She could occasionally push and/or pull with the left upper extremity. She could never crawl or climb ladders, ropes, or scaffolds, but could occasionally balance, stoop, kneel, crouch, and climb ramps and stairs. She could occasionally reach overhead and frequently reach in all other directions with the left upper extremity. She could tolerate occasional exposure to excessive vibration, occasional exposure to environmental irritants such as fumes, odors, dust, and gases, and occasional exposure to poorly ventilated areas. She was limited to work involving no use of moving hazardous machinery and no exposure to unprotected heights. She could understand, remember, and carry out simple instructions that could be learned in up to and including thirty days of on-the-job training. She could keep pace sufficient to complete tasks and meet quotas typically found in unskilled work, could tolerate only occasional interaction

1  with the public, and could adapt to workplace changes.  AR 27-33.  With this RFC, the ALJ found that
2  Plaintiff was unable to perform any past relevant work.  However, prior to June 23, 2016, the date her
3  age category changed, there were jobs in the national economy that Plaintiff could have performed,
4  such as marker, router, and office helper.  AR 33-35.  The ALJ therefore concluded that Plaintiff was
5  not disabled prior to June 23, 2016, but became disabled on that date and continued to be disabled
6  through the date of the decision.   Further, she was not under a disability at any time through
7  December 31, 2015, the date last insured.  AR 35.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or

7

her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## **DISCUSSION**[3]

Plaintiff argues that the ALJ erred in evaluating (1) Plaintiff's borderline age situation at the time of her date last insured; (2) record evidence of use of a cane when developing the RFC; and (3) her subjective complaints.

### A.  Borderline Age

Plaintiff argues that because she was 54 years, 6 months, and 8 days old as of her date last insured, a borderline age situation existed that was neither identified nor addressed by the ALJ. (Doc. 22 at p. 12.) The Court disagrees.

As Plaintiff notes, she was 54-years old on her date last insured for disability insurance benefits (AR 33), which is defined as an individual closely approaching advanced age. *See* 20 C.F.R. § 404.1563(d). At age 55 on June 23, 2016, she would have been considered an individual of advanced age. *See* 20 C.F.R. § 404.1563(e). "Age is significant to the disability determination." *Valentin v. Saul*, No. 2:18-cv-02394 AC, 2020 WL 91997, at *4 (E.D. Cal. Jan. 8, 2020). Once a claimant establishes that she suffers from a severe impairment that prevents her from doing any past work, the burden shifts to the Commissioner to "show that the claimant can perform some other work that exists in significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Valentin*, 2020 WL 91997, at *4. There are two ways for the Commissioner to meet this burden: "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical–Vocational Guidelines ['the grids'] at 20 C.F.R. pt. 404, subpt. P, app. 2." *Tackett*, 180 F.3d at 1101 (emphasis in original).

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

The grids consist of a matrix of the "four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 461–62 (1983) (footnotes omitted). There are three age categories: younger person (under age 50), person closely approaching advanced age (age 50–54), and person of advanced age (age 55 or older). 20 C.F.R. § 404.1563(c)–(e). "A 'borderline [age] situation' occurs if the claimant is 'within a few days to a few months of reaching an older age category' and would be found 'not disabled' if the category for the claimant's chronological age were used, but 'disabled' if the older age category were applied. *Valentin*, 2020 WL 91997, at *4 (quoting 20 C.F.R. § 404.1563(b).) The relevant regulation states:

> We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

*Id.* "The ALJ has discretion to determine the applicable age category in a borderline situation; judicial review is limited to the question whether the ALJ considered whether to use the older age category rather than applying the categories mechanically." *Valentin*, 2020 WL 91997, at *5 (citing *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071, 1072 (9th Cir. 2010), cert. denied, 563 U.S. 975 (2011)). In other words, the regulation "requires only that the ALJ consider whether to use the older age category; it does not impose any obligation to make express findings incorporated in the ALJ's opinion." *Lockwood*, 616 F.3d at 1073.

Here, the ALJ satisfied the requirement that she consider whether to use the older age category. Indeed, the ALJ identified Plaintiff's date of birth, and determined that prior to the established disability onset date, she was an individual closely approaching advanced age. The ALJ further noted that on June 23, 2016, Plaintiff's age category changed to an individual of advanced age. AR 33. For the period prior to June 23, 2016, the ALJ relied on the testimony of a vocational expert to determine whether Plaintiff retained the RFC to perform other work in the national economy, considering Plaintiff's *age*, education, and work experience. AR 34-35. It is evident from the decision that the

ALJ did not "apply the age categories mechanically." *See Lockwood*, 616 F.3d at 1072 ("[W]e are satisfied the ALJ did not 'apply the age categories mechanically' because the ALJ 'evaluat[ed] the overall impact of all the factors of [the claimant] case' when the ALJ relied on the testimony of a vocational expert before she found [the claimant] was not disabled."). The ALJ also determined that when Plaintiff's age category changed, a finding of disabled was reached by direct application of the grids. AR 35.

Plaintiff relies on the Program Operations Manual System ("POMS") to identify adverse vocational factors and to argue that the ALJ should have applied the higher age category. (Doc. 22 at pp, 11-12.). However, POMS constitutes an agency interpretation that does not impose judicially enforceable duties on the ALJ. *Lockwood*, 616 F.3d at 1073. As the Ninth Circuit has expressed, the regulation at issue requires only that the ALJ consider whether to use the older age category. *Id.* Moreover, the POMS example cited by Plaintiff involved an individual within one month of the higher age category, (*see* Doc. 22 at p. 12), not the six months present here.

**B. Assistive Device**

Plaintiff next contends that the ALJ improperly evaluated Plaintiff's need for an assistive device in determining her RFC. (Doc. 22 at 13-14.) Specifically, Plaintiff argues that the record supports additional limitations related to her need to use a cane. According to Plaintiff, this limitation undermines the ALJ's finding that Plaintiff can perform light exertional work.

In the RFC assessment, the ALJ is required to consider all limitations and restrictions imposed by all impairments, even those deemed not severe. *See* 20 C.F.R. §§ 404.1545, 416.945; Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (requiring ALJ's RFC assessment to "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'"). The use of a hand-held assistive device such as a cane is a functional limitation only if it is medically required. *See* SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996); *Quintero v. Colvin*, No. 1:13-cv-00478-SKO, 2014 WL 4968269, at *10 (E.D. Cal. Sept. 29, 2014) ("The use of a cane or other 'hand-held assistive device' is probative of a claimant's functional limitations only if it is medically required."). "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device

10

to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7.

Here, the ALJ considered Plaintiff's testimony that she reported needing a cane (AR 28) and that she was provided one in May 2015 (AR 29). However, the ALJ explained that the treatment records did not show consistent use of a cane and multiple examinations revealed normal gait without the use of any assistive device. AR 29, 537 (gait normal), 579 (did not bring cane to psychological evaluation); 673 (October 2017, gait normal), 718 (January 2018, normal gait, can walk on heels, toes) 988 (January 2020, gait normal). The ALJ also noted that Plaintiff admitted to not using her cane all the time and that she did not bring it the hearing. AR 28, 49. Further, the ALJ considered the findings of the consultative examiner, Dr. Tomas Rios, who determined that Plaintiff had a normal gait during examination and did not require an assistive device. AR 29, 446, 448. The ALJ found Dr. Rios' opinion persuasive, and Plaintiff has not challenged the ALJ's reliance on this opinion. AR 32. The Court therefore finds that the ALJ's determination regarding use of a cane is supported by substantial evidence.

Plaintiff counters that there is sufficient medical documentation in the record that establishes the need for a cane and describing the circumstances for which it is needed. (Doc.22 at p. 14.) To support this assertion, Plaintiff cites evidence that on May 1, 2015, she complained to PA-C David Sanchez of being "unsteady with balance" and requested a cane. (*Id.*, citing AR 532.) PA-C Sanchez ordered a walking cane and described the length of need as "lifetime." (*Id.*, citing AR 534.) While Plaintiff correctly notes that PA Sanchez ordered the cane, that order did not describe the circumstances for which it was needed, i.e., whether all the time, periodically, or only in certain situations; distance or terrain; or any other relevant information.[4] AR 533-34. Absent a description of the circumstances for which the case is needed, the cited evidence does not satisfy SSR 96-9p. *See Sou v. Saul*, 799 F. App'x. 563, 564-65 (9th Cir. 2020) (holding claimant failed to show a cane was

---

[4] The Court also notes that the associated examination by PA-C Sanchez did not identify any objective findings demonstrating that a cane was medically required. AR 533-34.

11

medically required where the evidence "did not describe the circumstances for which a cane was needed").

This is also true to the same extent that Plaintiff relies on record evidence showing the following: she reported to her treating providers when she was using her cane more often because of increased symptoms (AR 694, 698, 797); decreased range of motion in her hips, right knee, and lumbar spine; positive straight leg raising tests; and tenderness (AR 718, 794); an emergency room visit on July 11, 2015 after she lost her balance, fell, and hit her head (AR 496-500); and testimony that she fell two days before the hearing (AR 57).  (Doc. 22 at p. 14.)  These records fall short of the standard set forth in SSR 96-9p as they do not provide the circumstances for which the cane is needed. Even if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020), citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197-98 (9th Cir. 2004).

### C. Plaintiff's Subjective Complaints

As a final matter, Plaintiff argues that the ALJ erred by rejecting her subjective statements without providing clear and convincing reasons.  (Doc. 22 at p. 15.)

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson*, 359 F.3d at 1196. First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.  *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but discounted her statements concerning the intensity, persistence and limiting effects of those symptoms.  AR 28-29.  The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

The Court finds that the ALJ provided clear and convincing reasons to discount Plaintiff's subjective complaints. First, the ALJ concluded that Plaintiff's complaints regarding her low back pain, knee pain and shoulder pain were not entirely consistent with the objective medical evidence or longitudinal treatment history. AR 29. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch*, 400 F.3d at 681. Here, for example, the ALJ noted that while physical examinations had shown tenderness and decreased range of motion at times, they had otherwise shown few significant ongoing abnormalities and had often shown normal gait and motor strength as well as normal range of motion in the extremity joints. AR 29, 445-48 (station normal, gait normal, motor strength 5/5 in upper and lower extremities with normal grip strength 5/5, tenderness along lumbar spine with some limited lumbar flexion/extension mobility); 537 (normal range of motion, normal gait, including tandem walk); 498 (normal ROM, normal strength, no tenderness, no swelling); 718-19 (normal gait, lower extremity strength 5/5 in ankles, knees and hips); 870 (normal gait; spine with normal gait and posture; no spinal deformity; symmetry of spinal muscles, without tenderness, decreased range of motion or muscular spasms; normal range of motion and normal sensation without tenderness in lower extremities); 988 (gait normal). The ALJ also noted that a consultative examination showed normal heel, toe and tandem gait, without the use of an assistive device, as well as normal motor strength, sensation, and reflexes. AR 29, 445-47. As another example, discussed previously, the ALJ noted that Plaintiff's treatment records did not show consistent use of a cane and multiple examinations had shown normal gait without the use of any assistive device. AR 29. Further, the ALJ determined that the records showed little additional treatment for back pain, knee pain, or left shoulder pain after July 2019. Rather, the treatment records showed routine treatment for hypertension, gastritis and asthma as well as various acute issues, and showed few complaints of pain. AR 30, 911-34, 988-91.

With regard to Plaintiff's mental impairments, the ALJ likewise considered that her allegations regarding psychiatric symptoms were not entirely supported by the objective medical evidence or the longitudinal treatment history. AR 30. The ALJ observed that consultative examinations in May 2015 and March 2016 showed few objective psychological abnormalities. AR 31. In particular, the May 2015 assessment revealed full range of affect, euthymic mood, memory within normal limits, adequate

concentration for performing simple, mathematical calculations, intact judgment and insight, satisfactory attention and concentration, and no indication of any serios psychopathological disturbance. AR 452-57. Similarly, in March 2016, the consultative examination showed adequate concentration, positive abstract thinking capacity, adequate judgment, with no psychological restrictions to job adjustment, and primary restrictions related to medical-physical issues. AR 581-82.

The ALJ also noted that Plaintiff received little ongoing mental health treatment other than medication from her primary care physician, and expressly acknowledged that Plaintiff received "little additional mental health treatment after July 2015," other than medication, and did not see "any mental health professional after 2018." AR 30-32. For instance, the ALJ identified that Plaintiff "no showed" for follow up mental health treatment after an assessment in October 2017. AR 31, 747. Further, although she requested a referral for bereavement counseling in May 2018, there was no record of follow through with that referral. AR 32, 983. Plaintiff herself testified that she had not seen any mental health professional after 2018. AR 32, 49. Where, as here, there is no medical evidence that the claimant's resistance to treatment "was attributable to her mental impairment rather than her own personal preference," an ALJ may properly consider the claimant's failure to seek mental health treatment. *Rivota v. Saul*, No. 1:18-CV-01342-BAM, 2020 WL 1306985, at *6 (E.D. Cal. Mar. 19, 2020) (citing *Molina v. Astrue,* 674 F.3d 1104, 1114 (9th Cir. 2012), (finding no error in ALJ's consideration that plaintiff sought little mental health treatment and did not participate in counseling).

Plaintiff does not challenge the ALJ's specific findings regarding her physical and mental impairments, and instead complains that the ALJ failed to identify which testimony, statements, or alleged limitations were inconsistent or unsupported by the objective evidence of record and longitudinal treatment history. (Doc. 22 at pp 16.) This complaint is belied by the ALJ's decision, which expressly identified Plaintiff's allegations regarding her low back pain, knee pain, shoulder pain, use of a cane, and mental health symptoms and explained how they were not entirely consistent with the objective medical evidence or longitudinal treatment history. AR 29, 30.

As a second reason for discounting Plaintiff's subjective allegations, the ALJ considered that Plaintiff received routine and conservative treatment for her physical condition. AR 29, 30. An ALJ is permitted to consider evidence of conservative treatment in evaluating a claimant's subjective

14

complaints. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding evidence of conservative treatment sufficient to discount claimant's testimony regarding severity of impairment). Here, the ALJ acknowledged that Plaintiff received conservative pain management treatment with medication, such as naproxen and tramadol, and injections, along with a back brace and cane.  AR 29-30, 390 (injection, TENS unit, back brace); 398 (Toradol, soma), 405 (Aleve and Soma), 554-55 (Aleve; steroid injections; trigger point injections), 561-66 (lumbar facet joint block; Aleve; trigger point injections), 666 (no surgical management), 720 (Tramadol), 722 (injections), 725 (gabapentin), 730 (Tylenol with codeine), 738 (Tylenol with codeine), 786 (gabapentin), 797 (naproxen), 811 (cane), 888 (right knee joint injection, knee brace).

      Plaintiff argues that the treatment she received was not conservative, citing her pain medications, back and knee injections, knee brace, back brace, TENS unit, cane, and a surgical consultation.  (Doc. 22 at pp. 16-17.)  This argument is not persuasive.  Several courts in this circuit have found that similar treatment measures, including injections, use of a TENS unit, and pain medications constitute conservative treatment. *See, e.g., Azevedo v. Comm'r of Soc. Sec.,* No. 2:19-CV-01073-KJN, 2020 WL 5633008, at *7 (E.D. Cal. Sept. 21, 2020) (citing cases noting conservative therapy consisting of physical therapy, anti-inflammatory and narcotic medications, use of a TENS unit, occasional epidural steroid injections, and massage therapy); *see also McMillen v. Berryhill*, No. 1:17-CV-00664-SKO, 2018 WL 3769829, at *20 (E.D. Cal. Aug. 7, 2018) (citing cases).

      Third, the ALJ discounted Plaintiff's complaints of disabling limitations because of reported improvement with treatment (AR 29-31, 405 ("has some relief with Aleve and Soma") , 413 (back pain "improved with Aleve and soma"), 420 ("back pain continues but improved" with medication), 465 ("medication is helping diminish depression and anxiety symptoms"), 478 ("improved crying, improved getting out of bed," "Trazodone improved sleep," and "Klonopin helping irritability"), 554 (steroid injection "with good relief for three weeks"), 555 ("OxyContin with good temporary relief of her symptoms"), 532 ("Klonopin med helps with anxiety"), 665 ("gabapentin which works"), 784 ("mood stable with Zoloft;" major depression "stable with Zoloft"), 888 ("excellent relief of pain" with lumbar epidural steroid injection lasting 3-4 months), 890 ("nerve block providing good and continued relief"), 892 ("takes tramadol with good temporary relief of her symptoms"), 983

15

(depression "stable with medication")), and noting that Plaintiff experienced worsening symptoms when she was not taking medications (AR 29-31, 794 ("pt not taking any medication.  feels back pain is worse"), 893 ("not taking any pain medication")).  The effectiveness of medication or treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be effectively controlled with medication are not disabling for the purpose of determining eligibility for SSI benefits.").  Plaintiff has not challenged this reason for discounting her subjective complaints.

      Fourth, the ALJ discounted Plaintiff's subjective allegations regarding her physical and mental limitations based on her daily activities, reasoning that her activities of daily living were "not limited to the extent that would be expected given her complaints of disabling symptoms and limitations." AR 29, 31.  An ALJ may properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina* 674 F.3d at 1112–13 (concluding ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"), superseded by regulation on other grounds.  Here, the ALJ cited evidence that Plaintiff was able to drive, shop, perform household chores, and serve as a caregiver for her elderly parents throughout much of the relevant period.  AR 29, 31 (citing AR 445 ("remains capable of driving a vehicle," "able to help with some of the household chores," and "independent with activities of daily living"), 405 ("is the sole caregiver for her elderly parents"), 453 ("able to complete all activities of daily living," "does drive,"), 468 ("has been taking care of her [mother] who has cancer"), 578 (lives with her parents, helps them out), 747 ("patient returning to live with her parents to assist in their care"); *see also* AR 453 ("During the day, she take care of her parents, does house work, cares for the pets, and watches television.").

      Plaintiff argues that her limited ability to perform some self-care and household tasks for short periods of time and with frequent breaks  (AR 52-53) is not inconsistent with her allegations of pain. Plaintiff also faults the ALJ for failing to inquire about the type of assistance that she provided her elderly parents. (Doc. 22 at p. 18.)  However, even where a plaintiff's activities suggest some

difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Molina*, 674 F.3d at 1113.

Based on the above, the Court finds that the ALJ did not err in the evaluation of Plaintiff's subjective complaints. Even if one of the reasons for discounting Plaintiff's subjective complaints was invalid, any such error is harmless because the ALJ provided other valid reasons for discounting Plaintiff's subjective testimony. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-63 (9th Cir. 2008) (finding that two invalid reasons to reject a claimant's testimony were harmless error where the ALJ articulated two other reasons supported by substantial evidence in the record); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be denied;
2. The Commissioner's determination to deny benefits be affirmed; and
3. The Clerk of this Court be directed to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Alice Marie Rodriguez.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.

*Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:     **April 24, 2023**                                   /s/ *Barbara A. McAuliffe*                 
                                                                                     UNITED STATES MAGISTRATE JUDGE